IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| METAL FORMING TECHNOLOGIES, INC. and DYNAMERICA MANUFACTURING COMPANY, | ) ) ) |
| Plaintiffs, | ) Cause No. 1:03-cv-0855 JDT-TAB ) ) |
| v. | ) ) |
| MARSH & McLENNAN COMPANY, | ) ) |
| Defendant. | ) ) ) |

**BRIEF IN SUPPORT OF DEFENDANTS'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE FOR SUBSTITUTION OF PARTIES, AND MOTION IN THE ALTERNATIVE FOR PARTIAL SUMMARY JUDGMENT ON DAMAGES**

Defendant Marsh USA Inc. ("Marsh"), by its counsel, files the following Brief in Support of Defendant's Motion for Summary Judgment or, in the Alternative for Substitution of Parties, and Motion in the Alternative for Partial Summary Judgment on Damages.

### I.  Introduction

As demonstrated herein, prior to the commencement of this action, Plaintiffs Metal Forming Technologies, Inc. ("Metal Forming") and DynAmerica Manufacturing Company ("DynAmerica") (collectively, the "Plaintiffs") had assigned to the Cincinnati Insurance Company ("Cincinnati") all the claims that they have asserted in this action.  Thus, Plaintiffs have no interest in the claims being asserted here and are not real parties in interest to this suit.  Thus, under Fed. R. Civ. P. 17(a), this suit cannot continue with Metal Forming and DynAmerica as plaintiffs.  Moreover, although Fed. R. Civ. P. 17(a) contemplates the substitution of plaintiffs, case law holds that substitution is not appropriate where, as here, there was no excusable mistake in naming the wrong parties as plaintiffs.  Accordingly, this Court should

grant summary judgment in favor of the Defendant Marsh and dismiss the claims asserted by Plaintiffs.

In the alternative, Cincinnati should be substituted for the Plaintiffs as the real party in interest. Also in the alternative, partial summary judgment should be granted in Marsh's favor as to damages. Plaintiffs are seeking to recover, as part of their claimed damages, several hundred thousand dollars for attorneys' fees that were incurred by Cincinnati in a prior lawsuit against the Plaintiffs. Under the American Rule, attorneys' fees are not recoverable unless authorized by statute or by an agreement between the parties. In this case, no statute provides for the payment of attorneys' fees and there was no agreement between the parties with respect to the payment of monies for fire damage sought herein. Accordingly, even if this action is permitted to continue with Cincinnati as plaintiff, which Marsh maintains would be counter to the case law, Marsh should be granted partial summary judgment with respect to any claim against it for attorneys' fees.

## II.     Statement of Material Facts Not in Dispute

1.    On June 30, 1992, the Plaintiffs (f/k/a Certified Metal Finishers and Pooler Industries, Inc.) entered into a lease agreement (the "Lease") with the Downtown Industrial Center ("DIC") for several buildings in a large, multi-tenant industrial complex in Muncie, Indiana. The original Lease term commenced on July 1, 1992 and terminated on June 30, 1997. (A true and correct copy of the Lease is attached as Exhibit A to Exhibit 1 to the Stipulated Facts for Summary Judgment Motion (the "Stipulation") filed herewith.)

2.    By letter dated December 28, 1996, the Plaintiffs exercised an option for an additional lease term of five years, commencing on July 1, 1997 and terminating on June 30, 2002. (A true and correct copy of the December 28, 1996 letter is attached as Exhibit B to Exhibit 1 to the Stipulation filed herewith.)

3. On March 21, 2000, the Leased premises and the contents therein were damaged in a fire. (Complaint for Damages filed in this action, Exhibit 4, ¶¶ 3 and 12)

4. The DIC's insurer, Cincinnati, paid property damages to the DIC pursuant to its policy insuring the DIC against the risk of loss to the complex and the DIC's business. (Complaint for Damages, Exhibit 4, ¶ 12)

5. On September 19, 2001, Cincinnati brought a subrogation action against Metal Forming and DynAmerica to collect the damages and expenses that it paid to its insured as a result of the March 21, 2000 fire. (Complaint for Damages, Exhibit 4, ¶ 12)

6. Cincinnati's suit against Metal Forming and DynAmerica, hereinafter the "First Lawsuit," was filed in the Delaware Circuit Court No. 3 in the State of Indiana. (Complaint for Damages, Exhibit 4, ¶ 12) (A true and correct copy of the Complaint for Damages and Demand for Jury Trial filed by Cincinnati is attached as Exhibit 1 to the Stipulation filed herewith.)

7. In its complaint against Metal Forming and DynAmerica in the First Lawsuit, Cincinnati alleged that it had paid "property damages and incurred expenses exceeding $1,051,000." (Stipulation, Exhibit 1, ¶ 11.)

8. In its prayer for relief, Cincinnati sought to recover this amount, plus prejudgment interest and costs, including attorneys' fees. (Stipulation, Exhibit 1, ¶¶ 17, 22, 27, 35 and 36)

9. In responding to the Complaint in the First Lawsuit, Metal Forming and DynAmerica denied that their employees negligently caused the fire and denied all liability to Cincinnati. (Defendants' Answer, Affirmative Defenses and Jury Demand in the First Lawsuit, a true and copy of which is attached as Exhibit 2 to the Stipulation filed herewith, ¶¶ 7-8)

10. On March 28, 2003, Cincinnati and the Plaintiffs entered into a settlement agreement. (A true and correct copy of the settlement agreement ("Settlement Agreement") is attached as Exhibit 3 to the Stipulation filed herewith.)

11. In the Settlement Agreement, the parties Metal Forming, DynAmerica and Cincinnati agreed amongst themselves that Metal Forming and DynAmerica negligently caused the fire that damaged the Leased premises. (Stipulation, Exhibit 3, p. 2, ¶ 4)

12. Metal Forming and DynAmerica further agreed to have a judgment entered against themselves and in favor of Cincinnati in the total amount of $1,500,000. (Stipulation, Exhibit 3, p. 6, ¶ 2)

13. This amount included $1,053,283.60 for the amount that Cincinnati was required to pay for damages caused and incurred by the fire. (Stipulation, Exhibit 3, p. 1, ¶ 3) It also included an additional amount, $446,716.40, for prejudgment interest and attorneys' fees allegedly incurred by Cincinnati in pursuing the claims that it asserted in the First Lawsuit. (Stipulation, Exhibit 3, p. 2, ¶ 5)

14. In exchange for Metal Forming and DynAmerica's agreement to have judgment in the total amount of $1,500,000 entered against them, Cincinnati covenanted and agreed not to take any steps or pursue any action to collect or execute on that judgment. (Stipulation, Exhibit 3, p. 6, ¶¶ 2, 3)

15. Instead, Cincinnati agreed to take an assignment of all of Metal Forming's and DynAmerica's claims against Marsh relating to the allegation in this lawsuit that Marsh negligently failed to procure appropriate insurance coverage for Metal Forming and DynAmerica. (Stipulation, p. 6-7, ¶¶ 4, 9)

16. This action was commenced by Metal Forming and DynAmerica on May 8, 2003, which was more than a month after Metal Forming and DynAmerica had sold, assigned

4

and transferred to Cincinnati all right, title and interest in the claims that they have asserted in this action.

### III.     Applicable Legal Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); Williams v. United Techs. Carrier Corp., 310 F. Supp. 2d 1002, 2004 U.S. Dist. LEXIS 5163, at *3-*4 (S.D. Ind. 2004).

Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial.  See Michael v. St. Joseph County, 259 F.3d 842, 845 (7th Cir. 2001).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Abrams v. Walker, 307 F.3d 650, 653 (7th Cir. 2002), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

As demonstrated below, there are no facts in dispute that would preclude the entry of summary judgment, as requested, in favor Defendant Marsh.

### IV.     Argument

**A.     Plaintiffs Are Not the Real Parties in Interest.**

Federal Rule of Civil Procedure 17(a) states that "every action shall be prosecuted in the name of the real party in interest."  To determine whether the requirement that an action be

brought by the real party in interest has been satisfied, the court must look to the substantive law creating the right being sued upon to see if the action has been instituted by the party possessing the substantive right to relief.  Strate v. Niagara Mach. & Tool Works, 160 F. Supp. 296, 299 (S.D. Ind. 1958).  State law will control in an action based on diversity of citizenship for purposes of ascertaining who possesses the original cause of action or deciding a question relating to its assignability.  American Nat'l Bank & Trust Co. v. Weyerhaeuser Co., 692 F.2d 455, 459-60 (7th Cir. 1982).

> 1. Plaintiffs Assigned Their Claims Against Marsh to Cincinnati in a Settlement Agreement.

Under Indiana law, an assignment of a claim passes the title to the assignee so that he is the owner of any claim and should be treated as the real party in interest under Fed. R. Civ. P. 17(a).  E.g., Allied Fid. Ins. Co. v. Continental Illinois Nat'l Bank & Trust Co. of Chicago, 677 F. Supp. 562, 563 (N.D. Ill. 1988) (holding, under Indiana law, that the liquidator of an insolvent company is the real party in interest because it is vested by operation of law with title to all property contracts and right of action of the company and stating that "assignee . . . should be treated as the real party in interest under Rule 17(a)"); see also Guynn v. Potter, No. IP-99-1907-C T/F, 2002 U.S. Dist. LEXIS 2810, at *13-*14 (S.D. Ind. Jan. 25, 2002) (discussing the real party in interest doctrine in the context of a bankruptcy estate).

When all the rights to a claim have been assigned, Indiana courts have repeatedly held that the assignor no longer may sue.  Reed v. Aetna Cas. & Surety Co., No. 92 CV 328, 1995 U.S. Dist. LEXIS 9154 at *9-*10 (N.D. Ind. Mar. 29, 1995) (holding under Indiana law that "where a claim has been assigned prior to the commencement of this action, the assignee is the only proper plaintiff, and the action cannot be maintained by the assignor"); E&L Rental Equip., Inc. v. Gifford, 744 N.E.2d 1007, 1011 (Ind. Ct. App. 2001) (holding "[a]fter a cause of action is fully assigned, the assignor is no longer a proper party to sue and has no right of action"); see also, Fairfield Dev., Inc. v. Georgetown Woods Sr. Apartments. Ltd. P'ship, 768

N.E.2d 463, 477 (Ind. Ct. App. 2002) (noting that the third-party defendant's motion for summary judgment was properly granted because the third-party plaintiff's assignment of all of its rights in those claims barred it from bringing claims).

Here, it is beyond dispute that Metal Forming and DynAmerica have assigned to Cincinnati all the claims that they have asserted against Marsh in this lawsuit. At pages 6-7, paragraph 4, the Settlement Agreement provides as follows:

> Contemporaneously with and in consideration of the grant of the Covenant Not To Execute, [Metal Forming and DynAmerica] hereby sell, assign and transfer to [Cincinnati] all rights, title and interest in any and all causes of action [Metal Forming and DynAmerica] have or may have now or in the future against Marsh for coverage for the claims raised in the Lawsuit, or for any damages sustained by reason of the failure of Marsh to procure adequate insurance coverage to cover the losses described by Cincinnati in the Lawsuit.

(Stipulation, Exhibit 3, pp. 6-7, ¶ 4)

In addition, at page 9, paragraph 9, the Settlement Agreement provides:

> [Metal Forming and DynAmerica] irrevocably assign to [Cincinnati] 100% of all monies or benefits obtained from Marsh or Marsh's agents, employees, parents, affiliates, representatives, or insurers, arising from [Metal Forming and DynAmerica's] claims against Marsh with respect to the failure to obtain coverage for the claims raised in the Lawsuit.

(Id., p. 9, ¶ 9)

Thus, it is undisputed that the Plaintiffs in this action, Metal Forming and DynAmerica, have no interest whatsoever in the outcome of this case. They assigned to Cincinnati all of their claims against Marsh, as well as all monies or benefits that might be obtained from Marsh as a result of this action. Under Rule 17(a) of the Federal Rules of Civil Procedure and the authority cited above, it is beyond dispute that the Plaintiffs to this action are not real parties in interest and cannot maintain this lawsuit.

      2.      Dismissal of the Plaintiffs' Claims is Appropriate
Because No Understandable Mistake Led to Suit
being Brought in the Plaintiffs' Names.

When an action is brought by a plaintiff who is not the real party in interest, the court must determine whether to dismiss the plaintiff's claims or merely substitute the real party in interest as plaintiff. Although the last sentence of Fed. R. Civ. P. 17(a) indicates that substitution of the real party in interest should be permitted, the rule is applied only to cases in which substitution of the real party in interest is necessary to avoid injustice. 6A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d §1555. Courts have held that where the determination of the right party to bring the action was not difficult and where no excusable mistake was made, the last sentence of Rule 17(a) is not applicable and the action should be dismissed. Spangler v. Pasadena City Bd. Of Educ., 537 F.2d 1031, 1035 n4 (9th Cir. 1976) (holding that "this sentence [the last sentence of Rule 17(a)] is not applicable, however, when there is no difficulty in determining the right party to bring an action and when there has been no excusable mistake made in selecting the party"); O'Donnell v. Kusper, 602 F. Supp. 619, 624 (N.D. Ill. 1985); Hobbs v. Police Jury of Morehouse Parish, 49 F.R.D. 176, 180 (W.D. La. 1970).

Under this standard and authority, there is no basis to allow the substitution of Cincinnati as a plaintiff in this case. Here, the determination of the real party in interest was not difficult. As parties to the Settlement Agreement, both Metal Forming and DynAmerica were fully aware that at the time that suit was filed, they had no interest in the outcome or in any of the claims asserted. They, and Cincinnati, were fully aware that Cincinnati was the real party in interest. Yet, although it knew that it had taken an assignment of all Metal Forming and DynAmerica's interest in the claims asserted in this action, Cincinnati decided to try to pursue this action in Plaintiffs' names and without identifying itself as the only entity that had any interest in the outcome of the case. Manifestly, the decision to commence this action with Metal Forming and DynAmerica as plaintiffs instead of with Cincinnati as a plaintiff was a considered,

tactical judgment and decision. Because the failure to commence this action without Cincinnati as plaintiff was not a "mistake", excusable or otherwise, the action should be dismissed.

### B.     As a Matter of Law, Attorneys' Fees Are Not Recoverable.

In the event that Marsh's motion that this action be dismissed is denied and this action is permitted to continue with Cincinnati as a substituted plaintiff, Marsh asserts, in the alternative, a motion for partial summary judgment as to damages.

In this action, Metal Forming and DynAmerica have asserted a damage claim for $1,400,000. This represents the full amount of the judgment that it agreed to have entered against it in the First Lawsuit, i.e., $1,500,000, less $100,000 for the amount that one insurance company, Traveler's, did pay towards the judgment agreed to between Metal Forming, DynAmerica and Cincinnati. (See Complaint for Damages in this action, paragraph 16 and damage prayer at pages 7-8.)

As stated above, this damage claim includes several hundred thousand dollars for attorneys' fees that Cincinnati allegedly incurred in pursuing its claims in the First Lawsuit against Metal Forming and DynAmerica. In exchange, *inter alia*, for Metal Forming and DynAmerica agreeing to have a judgment entered against them in this amount, Cincinnati agreed not to take any steps to execute or collect on that judgment. (Id., p. 6, ¶ 3)

This attempt to hold Marsh liable for Cincinnati's attorneys' fees fails as a matter of law. The American Rule against recovery of attorneys' fees is well established; each party involved in litigation must pay its own attorneys' fees. Coyne-Delaney Co. v. Capital Dev. Bd., 717 F.2d 385, 393 (7th Cir. 1983); Thor Elec. v. Oberle & Assocs., Inc., 741 N.E.2d 373, 382 (Ind. Ct. App. 2000) (noting that Indiana follows the American rule). It is settled law that in the absence of a statute or an agreement between the parties each party is required to pay their own

attorneys' fees. <u>Minnesota Power & Light Co. v. Hockett</u>, 105 F. Supp. 2d 939, 944-45 (S.D. Ind. 1999); <u>Kikkert v. Krumm</u>, 474 N.E.2d 503, 504 (Ind. 1985); <u>Buschman v. ADS Corp.</u>, 782 N.E.2d 423, 431 (Ind. Ct. App. 2003).

In this case, there is no agreement that required Metal Forming and DynAmerica to pay the attorneys' fees of Cincinnati in the First Lawsuit that gave rise to the Settlement Agreement. In that action, Cincinnati claimed that it was entitled to legal fees by virtue of paragraph 16 of the Lease under which Metal Forming and DynAmerica occupied the property that was damaged in the fire. (Stipulation, Exhibit 1, ¶ 36) That paragraph of the Lease provides, in its entirety:

> 16. <u>Default and Remedies</u>. Upon default by the Lessee in the payment of monthly rental or any other sums as the same becomes due hereunder, and the continuation of any such default for ten (10) days following the sending of written notice thereof to Lessee, or upon the failure of Lessee to fully and promptly perform any other term or condition of this Lease on the part of Lessee to be kept and performed and efforts to correct any such failure are not commenced within thirty (30) days following the sending of written notice thereof to Lessee and diligently prosecuted to completion, or if the Lessee should make an assignment for the benefit of its creditors, or if a receiver or trustee should be appointed for the Lessee or its property, or if a petition or other proceeding in bankruptcy or debtor's relief should be filed by or against the Lessee, then in either of such events Lessor may repossess the leased property without any additional demand or notice of any kind to Lessee in which event Lessor shall not be under any obligation to relet all or any part of the leased property but may, in its discretion, do so upon such terms and conditions as may be satisfactory to Lessor. **In the event the leased property is not relet, or is relet and a sufficient sum shall not be realized therefrom to equal or exceed the rents herein provided for the remainder of the lease term, Lessee shall pay unto Lessor upon demand the difference between the rents herein provided for the remainder of the lease term and the amount which Lessor may reasonably expect to actually realize from any reletting. The parties hereto stipulate and agree that any such repossession and/or reletting shall not terminate this Lease and, in the event Lessee fails to pay upon demand the sums as hereinabove provided, Lessor may bring suit at once in a court of competent jurisdiction to recover, without relief from valuation and appraisement laws, all sums as may then or thereafter become due hereunder, together with all costs, expenses, bond premiums and attorney's fees incurred by Lessor hereunder.** Provided, that Lessor's right to seek any remedy as herein provided shall not be deemed waived by the failure to exercise said right nor shall any such failure estop Lessor from afterwards asserting said right to seek any remedy as provided herein or as provided by law. The remedies of Lessor shall be cumulative, and include any and all remedies as provided by law,

>and no one of them shall be construed as exclusive of any other or of any remedy provided by law.

(Stipulation, Exhibit A to Exhibit 1, emphasis added)

Thus, the only obligation on the part of Metal Forming and DynAmerica to pay the Lessor's attorneys' fees arises with respect to a lawsuit in which the Lessor seeks to recover "the difference between the rents . . . provided [in the Lease] for the remainder of the lease term and the amount which Lessor may reasonably expect to actually realize from any reletting." Manifestly, nothing in the Lease even purports to require that Metal Forming and DynAmerica pay the Lessor's attorneys' fees in the event that the Lessor files suit against them trying to recover monies for fire damage caused to the property.

It is indisputable that the First Lawsuit was not a suit to recover the difference between rent due under the Lease and rents that the Lessor might reasonably have expected to actually realize after reletting of the property. (See Stipulation, Exhibit 1.) Indeed, the Complaint for Damages and Demand for Jury Trial in the First Lawsuit does not make a single reference to rents that the Lessor was unable to collect because of the fire. (Id.) Rather, it is a suit to recover alleged "property damage and expenses exceeding $1,051,000." (Id., ¶¶ 11, 17, 22, 27 and 35)

Because the Lease did not require Metal Forming and DynAmerica to pay the Lessors attorneys' fees in the First Lawsuit and because no statute required Metal Forming and DynAmerica to make such a payment, under the American Rule, Metal Forming and DynAmerica were under no legal obligation to pay the attorneys' fees of the Lessor in the First Lawsuit. Thus, by entering into the Settlement Agreement, Metal Forming and DynAmerica gratuitously volunteered to have judgment entered against them for several hundred thousand dollars more than they could possibly have been liable for had they fully litigated the First Lawsuit and were found liable for all damage caused to the property because of the fire.

11

Although parties generally do not make gratuitous payments to their opponents in litigation in excess of their maximum potential liability, it is obvious in this case why Metal Forming and DynAmerica would agree to be held liable for Cincinnati's attorneys' fees. Because Cincinnati was agreeing not to collect or execute on the judgment, Metal Forming and DynAmerica did not have any interest in the total amount of the judgment. They would never have to pay it.

Even if Metal Forming and DynAmerica were to dispute their motivation for agreeing to pay attorneys' fees, however, such a dispute would not raise a dispute as to any material fact that could preclude the entry of summary judgment on this issue. That is, regardless of why Metal Forming and DynAmerica agreed to have the judgment for attorneys' fees entered against them, they were never under any legal obligation to pay such fees.

Because Metal Forming and DynAmerica volunteered to make a payment that they had no legal obligation to make, any "damage" claimed as a result of that payment was not proximately caused by Marsh's alleged failure to procure adequate insurance coverage for Metal Forming and DynAmerica. Accordingly, even if this action were permitted to continue with Cincinnati substituted as the plaintiff, Marsh should be granted summary judgment in its favor as to the claim to recover Cincinnati's attorneys' fees.

## V. Conclusion

For the foregoing reasons, Marsh respectfully requests that its Motion for Summary Judgment be granted.

Respectfully submitted,

LOCKE REYNOLDS LLP

_____
John K. McDavid
Wade Dunlap Fulford
LOCKE REYNOLDS LLP
201 N. Illinois Street
Suite 1000
P.O. Box 44961
Indianapolis, IN  46244
317-237-3823/3857

REED SMITH LLP

_____
Jack B. Cobetto
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA  15219
412-288-7282

Attorneys for Defendant Marsh USA Inc.

Dated:  June  25, 2004

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was served electronically and/or by United States Mail, first-class, postage prepaid on the following counsel of record this 25th day of June 2004:

Scott L. Starr
STARR AUSTIN TRIBBETT MYERS & MILLER
starr@satmlaw.com

Jack B. Cobetto
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA   15219


/s/ Wade D. Fulford
Wade D. Fulford

666529_1