IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| METAL FORMING TECHNOLOGIES, INC. and DYNAMERICA MANUFACTURING COMPANY, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| MARSH & McLENNAN COMPANY, | ) ) |
| Defendant. | ) ) ) |

Cause No. 1:03-cv-0855 JDT-TAB

**REPLY BRIEF IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Marsh USA Inc. ("Marsh"), by its counsel, files the following Reply Brief in Support of Defendant's Motion for Summary Judgment.

## I.  Plaintiffs Are Not Real Parties In Interest.

Plaintiffs Metal Forming Technologies, Inc. ("Metal Forming") and DynAmerica Manufacturing Company ("DynAmerica") (collectively, the "Plaintiffs") do not contest, in their Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Plaintiffs' Memorandum"), that they will receive no monetary benefit from this litigation.  The only interest that they assert is that the $1.4 million judgment that they agreed to have entered against them "effects MTI's credit worthiness and obviously its credit standing." (Plaintiffs' Memorandum, p. 5)

This allegation, which is not supported by any record evidence, is dubious.  It is difficult to see how a judgment in favor of Cincinnati Insurance Company ("Cincinnati") that Cincinnati has agreed never to collect or execute on can effect Plaintiffs' credit worthiness or credit standing.

In any event, this allegation has no relevance whatsoever to the issue of whether Plaintiffs are a "real party in interest" under Rule 17(a) of the Federal Rules of Civil Procedure ("Rule 17(a)").  It is undisputed that to the extent that Plaintiffs have suffered any damage or injury, including damage to their credit standing, credit worthiness or otherwise, as a result of the alleged conduct of Marsh, any and all causes of action Plaintiffs may have chosen to assert against Marsh for such damage have been assigned to Cincinnati.  The language of the assignment is as clear as it is categorical:

> Contemporaneously with and in consideration of the grant of the Covenant Not To Execute, [Metal Forming and DynAmerica] hereby sell, assign and transfer to [Cincinnati] all rights, title and interest in any and all causes of action [Metal Forming and DynAmerica] have or may have now or in the future against Marsh for coverage for the claims raised in the Lawsuit, or for any damages sustained by reason of the failure of Marsh to procure adequate insurance coverage to cover the losses described by Cincinnati in the Lawsuit.
>
> . . .
>
> [Metal Forming and DynAmerica] irrevocably assign to [Cincinnati] 100% of all monies or benefits obtained from Marsh or Marsh's agents, employees, parents, affiliates, representatives, or insurers, arising from [Metal Forming and DynAmerica's] claims against Marsh with respect to the failure to obtain coverage for the claims raised in the Lawsuit.

(Settlement Agreement, pp. 6-7, ¶ 4; p. 9, ¶ 9)

Given this language, it could not be more clear that Plaintiffs have no legal interest in this lawsuit.  Whatever damage Plaintiffs may allege that they have suffered as a result of Marsh's alleged conduct, any and all rights to assert claims or causes of action against Marsh, and all rights to any recovery that might be obtained as a result of such claims or causes of action, are no longer owned by Plaintiffs.  They are owned by Cincinnati.

At page 5, Plaintiffs' Memorandum points out that Plaintiffs' settlement agreement with Cincinnati "expressly provides that the litigation against Marsh may be filed in the name of MTI."  This also has no bearing whatsoever to the issue of whether Plaintiffs are a

"real party in interest" under Rule 17(a). Litigants can not agree amongst themselves to ignore or alter the requirements of Rule 17(a).

Indeed, in <u>Allied Fid. Ins. Co. v. Continental Illinois Nat'l Bank & Trust Co. of Chicago</u>, 677 F. Supp. 562, 563 (N.D. Ill. 1988), the district court addressed, and summarily rejected, this type of attempt to supercede Rule 17(a). In that case, not an agreement between private parties, but rather an Indiana statute, purported to permit the real party in interest to pursue a lawsuit in the name of another party. The district court properly held that the statute could not supercede the requirements of Rule 17(a):

> The fact that Indiana law *permits* Liquidator to bring actions in the name of Allied, *see Ind. Code § 27-9-3-9(b)(12)*(1986), does not alter this conclusion. In this federal lawsuit, the Federal Rules of Civil Procedure control, and under those rules, Liquidator, as the real party in interest, is the proper plaintiff here.

677 F. Supp. at 562 (emphasis in original) If a state statute cannot supercede Rule 17(a), then, *a fortiori*, no agreement between private parties can supercede Rule 17(a).

Plaintiffs have cited no applicable authority to support their position that they are entitled to maintain this lawsuit Their reliance on three Indiana state court decisions, <u>Singleton v. O'Blenis</u>, 25 N.E. 154 Ind. 1890), <u>Ferris Realty v. ABCO Signs, Inc.</u>, 182 N.E.2d 456 (Ind. App. 1962), and <u>Reid v. Ross</u>, 15 Ind. 265 (Ind. 1860), is wholly misplaced. First, these cases were decided, respectively, 114, 42, and 144 years ago. Moreover, not a single one of these cases cites, refers to or has anything to do with Rule 17(a).

Furthermore, more recent Indiana cases that involve language similar to that in Rule 17(a), i.e., <u>E&L Rental Equip., Inc. v. Gifford</u>, 744 N.E.2d 1007, 1011 (Ind. Ct. App. 2001), and <u>Fairfield Dev., Inc. v. Georgetown Woods Sr. Apartments. Ltd. P'ship</u>, 768 N.E.2d 463, 477 (Ind. Ct. App. 2002), hold clearly that once a party has assigned its rights to a cause of action, as in this case, that party is no longer a proper plaintiff.

At page 7, Plaintiffs' Memorandum attempts to distinguish <u>E&L Rental Equip.</u> on the grounds that the assignor had "submitted his wage claim dispute claim to the Commissioner

of Labor" and that the court held that "in a wage dispute suit the Commissioner of Labor must be named plaintiff."

This just misstates the holding in E&L Rental Equip. As a review of the opinion in E&L Rental Equip. makes clear, the basis for the court's decision had nothing to do with the reason *why* the Commissioner received the assignment (in that case by operation of law). Rather, the basis of the decision was that the Commissioner, as a *result* of the assignment, was the owner of the cause of action being asserted. The Court properly held that under Indiana Trial Rule 17(a), which is virtually identical to Rule 17(a), the owner of the cause of action was required to be the plaintiff.

Similarly, Plaintiffs' attempts to distinguish the other cases cited by Marsh are without merit. At page 6, Plaintiffs' Memorandum complains that Marsh has relied on two "bankruptcy cases", i.e., Allied, supra, and Guynn v. Potter, No. IP-99-1907-C T/F, 2002 U.S. Dist. LEXIS 2810 (S.D. Ind. Jan. 25, 2002), that have no application here. Again, however, a review of the decisions in Allied and Guynn makes clear that, as is the case in E&L Rental Equip., the courts' holdings are in no way based on how or why a party acquired ownership and title to the causes of action being asserted in the lawsuit, i.e., whether through operation of bankruptcy or other statutes or private agreements. Rather, the courts based their decisions on the fact that, regardless of how ownership or title in a cause of action was obtained, Rule 17(a) requires that only the owner of the cause of action can maintain the suit as a plaintiff.

Furthermore, Marsh has cited another federal case, Reed v. Aetna Cas. & Surety Co., No. 92 CV 328, 1995 U.S. Dist. LEXIS 9154 at *9 -*10 (N.D. Ind. Mar. 29, 1995), that does not involve bankruptcy law, is directly on point, and clearly holds that "where a claim has been assigned prior to the commencement of this action, the assignee is the only proper plaintiff, and the action cannot be maintained by the assignor." Plaintiffs cannot, and have not even attempted to, distinguish this case.

In sum, by virtue of the undisputed facts and compelling authority cited by Marsh, Plaintiffs have no right to maintain this lawsuit. The claims that they have purported to assert

4

against Marsh belong to Cincinnati. Thus, Marsh is entitled to summary judgment in its favor on all claims that Plaintiffs have attempted to assert.

**II. Substitution of Cincinnati As Plaintiff Should Not be Permitted.**

Marsh submits that the great weight of authority is that the last sentence of Rule 17(a) applies only when the determination of the real party in interest was difficult or when there was an honest, understandable and excusable mistake in failing to name the real party in interest. In addition to the cases previously cited by Marsh, numerous other courts have refused to permit substitution under this standard. E.g., Zurich Insurance Company v. Logitrans, Inc., 297 F.3d 528, 532 (6th Cir. 2002) (stating last sentence of Fed. R. Civ. P. 17(a) is "intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made"); United States v. CMA, Inc., 890 F.2d 1070, 1074-75 (9th Cir. 1989) (holding that "this portion of Rule 17(a) is to prevent forfeiture when determination of the right party to sue is difficult or when an understandable mistake has been made"); Weiburg v. GTE Southwest, Inc., 2002 WL 31156431 *2 (N.D. Tex.) ("courts have interpreted the last sentence of Rule 17(a) as applicable only when the plaintiff brought the action in his own name because of an understandable mistake or when the real party in interest is difficult to determine"); Feist v. Consolidated Freightways Corp., 100 F.Supp.2d 273, 275 (E.D. Pa. 1999) aff'd, 216 F.3d 1075 (3d Cir. 2000), cert denied, 532 U.S. 920 (2001) ("[w]hen determination of the correct party to bring the action was not difficult and when no excusable mistake was made, the last sentence of Rule 17(a) is inapplicable and the action should be dismissed"); Lans v. Gateway 2000, Inc., 84 F.Supp.2d 112, 120 (D.D.C. 1999) (stating that "[t]he Court adopts this 'honest and understandable mistake' test for evaluating [plaintiff's] Rule 17(a) motion"); Automated Information Processing, Inc. v. Genesys Solutions Group, Inc., 164 F.R.D. 1 (E.D.N.Y 1995) ("AIP").

Of all the cases cited by Marsh, or by Plaintiffs, Lans and AIP involve facts that most closely resemble the facts in this action. In Lans, the issue was whether substitution should

be permitted when the plaintiff sought to assert claims based on a patent that he had previously assigned to another party. In AIP, the issue was whether substitution should be permitted where the corporate plaintiff had assigned the rights it had against a former joint venture partner to a new corporation. In both these cases, the courts refused to permit the substitution of the assignee as a new plaintiff because the failure to name the assignee in the first instance was not an understandable or excusable mistake.

Lans is also instructive in that it discusses at length one of the two cases relied upon by Plaintiffs, Link Aviation, Inc. v. Downs, 325 F.2d 613 (D.C. Cir. 1963). The court expressly rejects the contention that the facts in Links Aviation should be applied to a situation, as in the present case, involving an assignment of rights:

> While plaintiff would have the Court analogize Lan's status to that of insureds in Link Aviation, the Court holds that both the assignor/assignee and the sole shareholder/corporation relationships present in this case are not parallel to the insured/insurer relationship in Link Aviation.

84 F.Supp.2d at 119.

In this case, there is no question that Plaintiffs were well aware that they had assigned to Cincinnati all ownership in any causes of action against Marsh. Indeed, counsel for Plaintiffs in this action represented Cincinnati in the first lawsuit by Cincinnati against Plaintiffs. So, in this case, as in Lans and AIP, "the information concerning the assignment was solely in the control of" Plaintiffs at the time this action was commenced. Lans, 84 F. Supp.2d at 120.

It is manifest that Cincinnati, with full knowledge that it owned all the claims being asserted in this action, decided to file this suit in Plaintiffs name as a litigation strategy and tactic. Because Plaintiffs have objected to discovery into the negotiations leading to the settlement agreement, Marsh cannot know for certain the reasons why Cincinnati elected to have

this case filed under Plaintiffs names. [1]  Still, whatever those reasons were, it is clear that the decision was a knowing, well-considered tactical judgment, not a mistake.

Plaintiffs assert that "[b]ecause of the judgment against it and its duty to assist in the vigorous prosecution of its claims against Marsh, MTI had a good faith basis to be named as plaintiff in this action." (Plaintiffs' Memorandum, p. 9)  As shown above, however, this is not a reasonable position.  Plaintiffs' obligation to assist in the prosecution of claims against Marsh does not provide even a colorable basis to assert that they are the real parties in interest and should be named as plaintiffs.  While they may have agreed to have a judgment entered against them, and to assist with this litigation, Plaintiffs were also aware that they had fully and finally assigned all right title in interest in the causes of action asserted herein to Cincinnati.

Plaintiffs also contend that they "relied on long standing Indiana law that states that the assignor can be named as plaintiff in this litigation." (Id.)  There is, however, no evidence whatsoever in the record to show that Plaintiffs reviewed the case law on this issue prior to filing this lawsuit.  Moreover, even if there were any such evidence, that would only undercut, not support, their position.  If Plaintiffs did in fact undertake legal research on this issue prior to filing this action, Plaintiffs must have failed to notice, ignored or rejected the recent cases directly on point stating that the assignee, not the assignor, must be the plaintiffs.  If Plaintiffs ignored, or even simply failed to notice, the recent authority cited by Marsh, they failed to make an understandable or reasonable effort and/or judgment.  As the Lans court held, "justice would not be served if the plaintiffs were rewarded" for their "failures" and "oversights".  84 F.Supp.2d at 120 (quoting AIP, 164 F.R.D. at 3).

---

[1]    Marsh suspects that Cincinnati made a decision that the ultimate fact-finder, the jury, would be more sympathetic if the plaintiffs included a local company doing business in the area, rather than a large insurance company.  It is also possible that Cincinnati hoped that they might be able to avoid having the jury hear evidence of the settlement agreement and assignment, which show that Plaintiffs have not had to pay, and will never have to pay, one dollar to anyone as a result of Marsh's alleged failure to procure appropriate insurance coverage for them.

Finally, Plaintiffs and Cincinnati should not be heard to complain that filing a new complaint in a new action might cause any inconvenience or delay in the resolution of any of Cincinnati's claims. They were fully aware that Cincinnati owned the causes of action asserted in the complaint in this case, and the law is clear that Cincinnati should have been named as plaintiff in this case. To the extent filing a new complaint in a new lawsuit causes any delay or inconvenience for Cincinnati, the responsibility for that delay lies with Cincinnati.

**III.  Marsh Is Entitled, In The Alternative, To Partial Summary Judgment As To Damages.**

In the event that Marsh's motion that this action be dismissed is denied and this action is permitted to continue after an amended complaint is filed with Cincinnati as a substituted plaintiff, Marsh asserts, in the alternative, a motion for partial summary judgment as to damages.

In responding to Marsh's arguments on this issue, Plaintiffs have urged a misreading of the relevant provision of the Lease agreement based on selective quoting of the Lease provisions.

The first 11 lines of Paragraph 16 of the Lease set forth five (5) distinct events that can give the Lessor the right to repossess the leased property. Marsh does not dispute that one of those 5 events, which is only partially quoted in Plaintiffs' Memorandum, is:

> . . . the failure of Lessee to fully and promptly perform any other term or condition of this Lease on the part of Lessee to be kept and performed and efforts to correct any such failure are not commenced within thirty (30) days following the sending of written notice thereof to Lessee and diligently prosecuted to completion . . .

Marsh is also not disputing in the context of this motion that one of the "terms and conditions of [the] Lease" was, as Plaintiffs claim, to "maintain the property in good repair" and to surrender the premises "in the same condition as when let."

But even if the fire damage to the property is viewed as a "failure" under the event cited above, this does not mean that the Lessor was entitled to recover attorneys fees in a negligence suit against Plaintiffs for damage to the property as a result of the fire. To the contrary, paragraph 16 of the Lease is clear that if this event occurs, this gives Lessor the right to repossess the property and also the right, but not the obligation, to relet the property on terms and conditions satisfactory to the Lessor:

> . . . then in either of such events Lessor may repossess the leased property without any additional demand or notice of any kind to Lessee in which event Lessor shall not be under any obligation to relet all or any part of the leased property but may, in its discretion, do so upon such terms and conditions as may be satisfactory to Lessor.

The Lease then provides that if the property was not relet, Plaintiffs were still obligated to pay the rent due thereunder. Also, if the property was relet, but for a rent that was less than the rent owed by Plaintiffs under the Lease, then Lessor was entitled to recover from Plaintiffs the difference. Here is the operative language of paragraph 16 of the Lease on this point:

> In the event the leased property is not relet, or is relet and a sufficient sum shall not be realized therefrom to equal or exceed the rents herein provided for the remainder of the lease term, Lessee shall pay unto Lessor upon demand the difference between the rents herein provided for the remainder of the lease term and the amount which Lessor may reasonably expect to actually realize from any reletting.

The next portion of paragraph 16 of the Lease contains the crucial language:

> The parties hereto stipulate and agree that any such repossession and/or reletting shall not terminate this Lease and, ***in the event Lessee fails to pay upon demand the sums as hereinabove provided***, Lessor may bring suit at once in a court of competent jurisdiction to recover, without relief from valuation and appraisement laws, all sums as may then or thereafter become due hereunder, together with all costs, expenses, bond premiums and attorney's fees incurred by Lessor hereunder. (emphasis added)

Thus, paragraph 16 of the Lease provides that if the Plaintiffs refused to pay this difference, i.e., "the sums hereinabove provided," Lessor can file suit for the sums that are "then or thereafter become due."

This language from paragraph 16 concerns the payment of rent due under the Lease. It in no way authorizes a lawsuit asserting a negligence claim for damage to the property. That is not to say that the lessor could not file such a claim. It could. It is only to say that the particular claim/lawsuit contemplated in paragraph 16 of the Lease is for rents due under the Lease. Accordingly, the scope of the attorneys' fees provision in paragraph 16 is limited to a suit that arises because Plaintiffs failed to pay upon demand rents as set forth above. It does not extend to a negligence claim/lawsuit seeking to recover damages to the property caused by a fire.

Plaintiffs have not disputed that the first lawsuit that was filed against them did not seek the recovery of rent. It sought to recover damages for the fire allegedly caused by Plaintiffs' negligence. While Cincinnati, as Lessor's subrogor, was free to file such a suit against Plaintiffs, it cannot claim paragraph 16 as a basis for the recovery of attorneys' fees in such a suit.

For this reason, Plaintiffs were under no obligation to pay Cincinnati's attorneys' fees in the first lawsuit. The fact that Plaintiffs, without any legal obligation to do, volunteered to be liable for those fees, as part of a settlement in which it was agreed that Plaintiffs would not actually have to pay those fees, or any other portion of the judgment that they agreed to have entered against them, entails that Marsh cannot liable for those fees.

Accordingly, if this suit is not dismissed, and if leave is granted for an amended complaint to be filed with Cincinnati as plaintiff, partial summary judgment should still be entered in Marsh's favor with respect to any claim for counsel fees incurred by Cincinnati in the first lawsuit.

Respectfully submitted,

REED SMITH LLP


/s/ Jack B. Cobetto
Jack B. Cobetto
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA  15219
412-288-7282


LOCKE REYNOLDS LLP



/s/ Wade D. Fulford
John K. McDavid
Wade Dunlap Fulford
LOCKE REYNOLDS LLP
201 N. Illinois Street
Suite 1000
P.O. Box 44961
Indianapolis, IN  46244
317-237-3823/3857


Attorneys for Defendant Marsh USA Inc.

Dated:  August 20, 2004

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing REPLY BRIEF IN SUPPORT OF DEFENDANTS'S MOTION FOR SUMMARY JUDGMENT was served via UPS Overnight, this 20th day of August, 2004, upon the following:

>
> Scott L. Starr, Esquire
> Starr Austin Tribbett Myers & Miller
> 201 South Third Street
> P.O. Box 120
> Logansport, IN 46947

/s/ Wade D. Fulford
Wade D. Fulford

674854_1